**Harold REAVES**

v.

**Allyn R. SIELAFF et al.**

**Civ. A. No. 73-1325.**

United States District Court,
E. D. Pennsylvania.

Sept. 12, 1974.

Civil Rights for Inmates, Temple University School of Law, Philadelphia, Pa., for plaintiff.

Philip R. Detwiler, Butera & Detwiler, King of Prussia, Pa., Maria Parisi Vickers, R. David Bradley, McEldrew, Hanamirian, Quinn, Bradley & D'Amico, Daniel J. Ryan, Edwin L. Scherlis, Philadelphia, Pa., Alan E. Boroff, Wisler, Pearlstine, Talone, Craig & Garrity, Norristown, Pa., for defendants.

### MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff seeks leave to file a second amended complaint. The defendant township volunteer fire companies have filed motions to dismiss as to them.

Plaintiff, while serving a sentence imposed by the state courts, filed, *pro se* and *in forma pauperis*, a civil rights complaint against the State Commissioner of Corrections and the Superintendent and a Deputy Superintendent of the State Correctional Institution at Graterford. Plaintiff alleged that while he was a prisoner in Graterford, a fire broke out and that the prison authorities made no attempt to rescue him from the fire. He further alleged that he was finally rescued by other inmates and thereafter removed to Dallas prison against the orders of a physician. This original complaint, although perhaps not perfectly drawn, fully complied with Fed.R.Civ.P. 8(a) and was indeed a "short and plain statement" of the jurisdictional grounds, the factual basis of the claim and a clear demand for compensatory and punitive monetary damages.

Plaintiff requested appointment of counsel and the court appointed counsel from the Temple Law Center pursuant to Local Rule 9½. Plaintiff then filed through appointed counsel an amended complaint.

The amended complaint essentially reasserted the original allegations which clearly set forth a civil rights cause of action. In addition it alleged common law negligence as to the state prison authorities in not having proper fire protection as to the building and its equipment, in not taking proper precautions to safeguard inmates in the event of a fire, and not adequately protecting the inmates against the fire, which negligence was alleged to be "reckless, wanton and wilful."[1] The amended complaint also joined two local fire companies, alleged to be nonprofit corporations who responded to the fire alarm. The fire companies are charged with negligently failing to promptly rescue plaintiff. The defendant fire companies moved to dismiss as to them asserting that (1) they were not "persons" within the context of the civil rights acts, (2) that the claims were solely for negligence as to them, and (3) that the complaint alleged no facts upon which there could be a finding of state action on the part of the fire companies. The amended complaint made no allegation of a conspiracy. Plaintiff's counsel filed an extensive brief, wherein it was agreed that the amended complaint "clearly al-

---

1. The concept of "wilful negligence," alleged repeatedly in both the amended and proposed second amended complaint, appears to be a paradox.

leged only tortious conduct" as to the fire companies "and that the allegation of violations of . . . constitutional rights . . . arise[s] by implication only."

Thereafter, prior to any ruling on the motion to dismiss, plaintiff filed a motion for leave to file a second amended complaint. This second amended complaint seeks to do the following:

(1) Reassert all of the claims and allegations of the original and first amended complaint.

(2) Join as defendants under the name of "John Doe" all of the fire chiefs, officers, supervisors, commanders and individual firemen of both defendant fire companies.

(3) Join Dr. Gaffney, the physician who treated plaintiff after the fire. The claim against Dr. Gaffney is essentially that of negligence in permitting plaintiff to be placed back in the "smoke-filled, damp cell" after the fire, which is alleged to have violated plaintiff's fifth, eighth and fourteenth amendment rights under the United States Constitution.[2]

(4) Assert by a generalized, non-specific allegation that all defendants conspired to defeat plaintiff's civil rights.[3]

(5) Claim, in addition to monetary damages, the right to broadscale mandatory injunctive relief against all defendants including the fire companies, requiring these companies to formulate and impose fire regulations in the prison, train their volunteer firemen and cooperate with prison officials in inspections and fire prevention, including construction of buildings.

A final relevant fact is that plaintiff has since been discharged from prison and is now on parole. After being discharged, he was shot and his condition is such that he may be permanently paralyzed in the lower part of his body.

■ Under Federal Rule 15(a) the proposed second amended complaint may only be filed by leave of court or consent of the adverse party. The Rule further states that "leave [to amend a pleading] shall be freely given when justice so requires." In Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that this language is a mandate to be heeded. There the Court announced certain "reasons" that would permit a refusal to allow an amendment of the complaint. They are (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to opponent, (5) futility of amendment, (6) "etc." The Court further stated at page 182, 83 S.Ct. at page 230:

> Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion.

The purpose of allowing amendment is to permit a final decision on the merits, and not on technicalities. United States v. Houghman, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960). The problem in this case is not the general right to amend, but whether amendment will serve the ends of justice.

The original pro se complaint as well as the amended complaint sought only monetary damages. The pro se complaint defined the issues clearly and identified as defendants three officials alleged to have engaged in conduct constituting cruel and unusual punishment. The case could have been promptly prepared and tried. The determinations would have been factual and appropriate for a jury decision. The proposed second amended complaint seeks broadscale mandatory injunctive relief in addition to monetary damages. The relief sought would in effect require a federal district court to prescribe, regulate and oversee every aspect of fire protection in a

---

2. Paragraphs 62 and 63 of the proposed second amended complaint.

3. Paragraph 55 of proposed second amended complaint.

state penal institution under the guise that the existing protection is so inadequate as to constitute cruel and unusual punishment. At least on the basis of the facts alleged in the complaint, of but one particular fire in which plaintiff asserts that he and other inmates in a particular cellblock were not removed from the dangers of the fire in a timely manner, I do not think this court would be justified in going into a full scale investigation as to the present fire protection at the state institution. This is particularly true in the absence of any allegation, direct or otherwise, that the present conditions are equally dangerous or that there is any likelihood of a repetition. It might also be pointed out that some of the relief sought would appear to clearly exceed any possible jurisdiction of this court, e. g., the demand that the township nonprofit fire companies regularly inspect the state prison and "cite the prison for violations" of the law.

■ The problem of the possibility of granting any of the equitable relief sought need not be presently determined because plaintiff lacks standing to litigate this issue. Plaintiff is no longer a prison inmate, and in fact, based on the allegations appears not to have been an inmate at Graterford after the fire when he filed the complaint. In any event he is now on parole. The duration of such parole into the future does not appear of record. Plaintiff's argument that he might at some indefinite future date be confined in Graterford as a parole violator is entirely inadequate to assert that he is or will be subject to cruel and unusual punishment unless the proper parties are enjoined. Any person, whether or not on parole, might at some indefinite future date be confined in a particular prison. If plaintiff's argument is sound, then logically any person, anywhere, whether presently within or without the jurisdiction of this district or the geographical limits of Pennsylvania, would have standing to contest the safety, health and fire prevention procedures and equipment· in any state penal institution. In the absence of any allegation that the conditions presently exist or will in the future exist as they existed at the time of the fire and that plaintiff will in the future be incarcerated in such prison under substantially those same conditions, there would appear to be insufficient standing to seek the extraordinary mandatory injunctive relief against state officials and private individuals.

■ Plaintiff cites no authority for including as defendants under the name of "John Doe" all of the firemen who attended the fire. Until and unless, there is some specific allegation of wrongdoing by particular, identifiable firemen or some factual allegations beyond mere conclusory statements of conspiracy, such pleading would be improper. Of course, if some identifiable individuals of the fire companies are alleged to have committed some specific violation of plaintiff's civil rights, and the name is unknown, this is not to rule that in such a situation a designation of "John Doe" could not be made until the correct name is ascertained. The form of the proposed amended complaint is, however, to make every individual fireman who responded to the fire call a defendant on the theory that all violated plaintiff's civil rights because each failed promptly to rescue him.

I have grave doubts that the non-specific generalized allegation that all defendants conspired together is sufficient to support a civil rights conspiracy action. Paragraph 55 of the proposed second amended complaint contains the only allegation of a conspiracy. It states:

> 55. The defendants Sielaff, Johnson, Parcell, the Skippack Township Fire Company, the Perkiomen Township Fire Company, the Skippack Firemen, the Perkiomen Firemen and Edmund Gaffney, M.D., acting in concert and under color of state law, conspired, reached an understanding, and agreed among themselves to violate the Constitutional rights of the plaintiff as set forth heretofore. and hereinafter.

Cases have held that generalized allegations of a conspiracy are insufficient to state a claim under the civil rights act. Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971); Family Forum v. Archdiocese of Detroit, 347 F. Supp. 1167, 1172 (E.D.Mich.1972); Drusky v. Judges of Supreme Court, 324 F.Supp. 332, 333 (W.D.Pa.1971). I do not understand Phillips v. Trello, 502 F. 2d 1000 (3rd Cir. 1974), to hold to the contrary. In *Phillips*, in addition to the general allegations of conspiracy, paragraph 10 of the complaint specified in detail the acts alleged to have been committed by each and every named defendant pursuant to the conspiracy. In the present case, except as to the general allegation that all of the defendants refused to perform unspecified duties that would have rescued him, all other charges of wrongdoing go solely to negligence.

As to Dr. Gaffney, except for the conclusory allegation of conspiracy in paragraph 55, the only charge is that he "failed to prevent the plaintiff's removal", presumedly from the infirmary back to the smoke damaged cell. At best, the allegations against Dr. Gaffney appear to arise after plaintiff was rescued from the fire, and are founded solely on doctrines of negligence. If there is any valid claim against Dr. Gaffney, it would appear to be an entirely distinct and separate cause of action.

The question of whether the various allegations and causes of action in both the amended complaint and the proposed second amended complaint should be permitted under the doctrine of pendent jurisdiction raises another difficult problem. Phillips v. Trello, *supra*, suggests that a district court should consider such a possibility. 502 F.2d at 1005. Although there may well be cases where maintaining pendent jurisdiction of a common-law negligence cause of action with that of a civil rights action is entirely proper, I do not think this to be such a case. The gravamen of the civil rights action is cruel and unusual punishment. The legal tests are vastly different from those of negligence, and it would seem to me that a jury might have serious difficulty in rendering a consistent verdict on the separate theories.

■ For all of the foregoing reasons, I do not believe the ends of justice will be served by permitting the proposed second amended complaint to be filed. However, this does not preclude the plaintiff from seeking to file a further amended complaint that will be consistent with this decision.

■ This first amended complaint sought to join two township fire companies alleged to be nonprofit corporations.[4] Plaintiff cites no authority in the briefs or pleadings thus far filed to support the novel contention that a nonprofit fire company would or could have any duty to inspect and prevent fire hazards at a state prison. The only possible Section 1983 civil rights action could be under a theory of cruel and unusual punishment arising out of the negligence of the fire companies, which negligence the complaint again charges to be "reckless, wanton and wilful."

In Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972), the Third Circuit expressly left open and unanswered the question of whether there could ever be a valid cruel and unusual punishment civil rights action based on culpable negligence. *Id.* at 279, n. 11. In all likelihood, the only duty that can be shown to be imposed on the defendant fire companies in the context of this case is that of one who gratuitously undertakes to perform a service for another. Sections 323 and 324 of the Restatement of Torts, 2nd, impose liability for negligently carrying out gratuitous services under certain conditions. I consider it

---

4. Defendant fire companies assert in their briefs, and undoubtedly will be able to conclusively establish that they are both volunteer nonprofit fire companies. However, such is not established as a fact on the present record.

extremely doubtful that the negligent carrying out of a gratuitous undertaking could constitute a violation of plaintiff's eighth amendment rights against cruel and unusual punishment. Nevertheless, the present record contains only bare allegations and until at least the actual status of the defendant fire companies is developed, the complaint should not be dismissed as to the fire companies. If the fire companies were undertaking a service required to be performed by the state, thus possibly establishing "state" action, there could conceivably be a civil rights cause of action against them.

■ The fire companies also contend they are so closely allied with, controlled by and carrying out municipal governmental functions as to come within the exemption afforded municipalities from civil rights damage actions under the doctrine of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The complaint, however, alleges that the fire companies are nonprofit corporations. Private corporations have been held liable in damages under the civil rights acts. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). Of course, it must be established that the violation by the private corporation was "under color of state law" under Section 1983 or by reason of a conspiracy under Section 1985. There is, however, no logical reason that I can perceive why a private corporation should not be as fully liable as an individual under the Civil Rights Act. In general legal theory, a corporation is a separate legal entity subject to the same liabilities as an individual person. Of course, in proving a Section 1983 cause of action against a private corporation such as a fire company, plaintiff has to walk a tightrope whereby he proves action "under color of state law" without proving the corporation to be a municipal corporation. At this stage of the proceedings, however, the exact status of the fire companies has not been conclusively established by the record. Dismissal as to the fire company defendants at this time would, therefore, be improper.

■ There is one final problem requiring some mention. Plaintiff originally sought only monetary damages against prison officials, as has been noted. Counsel was appointed for him under Local Rule 9½ which was adopted to assist indigent prisoners. Since plaintiff is no longer a prisoner, the representation by the appointed attorneys may not be in literal compliance with the rule, but I think that the appointment should continue for this litigation. However, Local Rule 9½ is very express that appointments thereunder are restricted to "any civil rights matter" and "any habeas corpus matter." A negligence or other tort claim by an indigent prisoners is not covered under Rule 9½ for a very good reason. Any person not in jail having a colorable or apparently meritorious negligence cause of action has no difficulty in hiring a private attorney to process the case on a contingent fee basis. I do not think this court should permit the utilization of what is essentially charitable legal services to displace the private practice of law in the field of negligence litigation. Consequently, if plaintiff intends to proceed on any theories of negligence as a separate cause of action (other than as a civil rights action based on culpable negligence), private counsel will have to be obtained. There is, of course, nothing to prevent the filing of any claimed negligence causes of action in state courts, and the statute of limitations, although approaching its expiration period, has not ended.

Appointed counsel has been most diligent in seeking to present on behalf of plaintiff all possible claims arising out of the fire and subsequent events resulting from the fire. This is commendable, but I suggest that counsel consult with plaintiff to realistically and carefully review the situation in light of this memorandum and the following order to ascertain plaintiff's position. Based on

478

the original complaint filed by plaintiff, his only interest is in seeking monetary damages for violation of his alleged civil rights by prison authorities. Undoubtedly he desires an expeditious determination. The inclusion of possible claims and theories, or the attempt to so do, in this action may not necessarily be that which plaintiff wishes counsel to do on his behalf and may not necessarily be in his best interests. This is not to suggest in any way that appointed counsel has not carefully consulted with plaintiff and followed his desires, but in view of the appointment of counsel by the court under Local Rule 9½ and its application to the facts of this case, special precautions may be advisable.